14  158
65  458

GEORGE BARTALOTT

v.

THE INTERNATIONAL BANK.

1. PLEADING—STATUTE OF LIMITATIONS.—Action of assumpsit for money had and received. Defendant's second plea was the Statute of Limitations, to which plaintiff pleaded a special replication seeking to avail himself of the provisions of section 22 of the Statute of Limitations. Plaintiff's

Bartalott v. The International Bank.

claim was that he paid the money in controversy to defendant to obtain the release of a certain deed of trust on land which he had recently purchased, in ignorance of the fact that it had already been paid to the defendant and satisfied in full, and that the fact of such previous payment was fraudulently concealed from him by the defendant at the time the money was paid and since, by reason of which he remained in ignorance, etc. Defendant urged that the replication failed to show that there was any defense to the trust deed. *Held*, that this point is not well taken. By the plea of the Statute of Limitations, plaintiff's cause of action stands admitted, and the only office of the replication is to avoid the bar of the statute by bringing it within an exception to such statute and as plaintiff's replication sufficiently alleges a fraudulent concealment of his cause of action, the court below erred in sustaining the demurrer to it.

2. FRAUDULENT CONCEALMENT OF CAUSE OF ACTION—STATUTE OF LIMITATIONS.—A replication to a plea of the Statute of Limitations, setting up a fraudulent concealment by the defendant of the cause of action, must set out the facts and circumstances constituting the fraud, and must show further that there has been no want of reasonable diligence on the part of the plaintiff in discovering the cause of action; must disclose the time when, and circumstances under which the discovery was made. But it is not essential that the acts constituting the fraudulent concealment should be subsequent to the accruing of the cause of action. They may be coincident with or even prior to it, provided there is the relation of design and its consummation.

APPEAL from the Superior Court of Cook county; the Hon. ROLLIN S. WILLIAMSON, Judge, presiding. Opinion filed February 12, 1884.

Messrs. LEAMING & THOMPSON, for appellant; that the fraud and deceit which enable the offender to do the wrong may precede its perpetration; the length of time is not material, provided there is the relation of design and its consummation, cited Martin v. Smith, 1 Dillon, 95; Carr v. Hilton, 1 Curt. C. C. R. 230; Campbell v. Vining, 23 Ill. 525; Way v. Cutting, 20 N. H. 187; Bowman v. Sanborn, 18 N. H. 205; First Mass., etc., Co., v. Field, 3 Mass. 201; Atlantic Nat. Bk. v. Harris, 118 Mass. 152; Mayne v. Griswold, 3 Sandf. 463; Jones v. Conoway, 4 Yeates, 109; Mitchell v. Buffington, 15 Lancaster Bar, No. 16.

Messrs. ROSENTHAL & PENCE, for appellee; as to the elements of an equitable estoppel, cited Bigelow on Estoppel, 432; Smith v. Newton, 38 Ill. 230; International Bk. v.

Bowen, 80 Ill. 541; Wood v. Carpenter, 101 U. S. 135; Kerr on Fraud, Am. ed., 73.

The destruction or cancellation of the evidence of a debt does not release the debt: Heartt v. Rhodes, 66 Ill. 351.

The payment of part of a debt in satisfaction of the whole will not satisfy the whole, and can not be pleaded in bar: Chitty on Contracts, 10th Am. ed., 821.

An agreement to abandon a claim, unless there be a consideration shown, is a mere *nudum pactum:* Wilson v. Keller, 9 Bradwell, 348; Addison on Contracts, 7th ed., 267; Chitty on Contracts, 10th Am. ed., 841.

Unless appellant was free from laches, or if he intended to waive all inquiry into the truth of the bank's claim, he can not recover: International Bk. v. Bartalott, 11 Bradwell, 620; Chitty on Contracts, 10th Am. ed., 694; Marriott v. Hampton, 2 Smith's Leading Cases, *400, 1; Milnes v. Duncan, 6 B. & C. 671; Kelly v. Solari, 9 M. & W. 54.

As to what will constitute a fraudulent concealment of the cause of action so as to take it out of the bar of the Statute of Limitations: Wood v. Carpenter, 101 U. S. 135; Nudd v. Hamblin, 8 Allen, 132; International Bk. v. Bartalott, 11 Bradwell, 620.

Bailey, J. This cause was before this court at the October term, 1882, at which time a judgment in favor of the plaintiff was reversed. International Bank v. Bartalott, 11 Bradwell, 620. The action was assumpsit for money had and received, and was brought by the appellant against the appellee. The defendant pleaded non-assumpsit and the Statute of Limitations. To the first of these pleas, the plaintiff added a similiter, and to the second he pleaded a special replication, alleging the fraudulent concealment from him by the defendant of his said cause of action, until within less than five years next prior to the commencement of the suit. Since the decision of the former appeal, the plaintiff has amended his replication, and a demurrer thereto having been sustained by the court, and the plaintiff having elected to abide by his replication, judgment was rendered against him for costs. From that

Bartalott v. The International Bank.

judgment this appeal is prosecuted, and the only question now presented is as to the sufficiency of the amended replication.

The plaintiff, by said replication, seeks to avail himself of the provisions of the twenty-second section of the Statute of Limitations, which is as follows: "If a person liable to an action, fraudulently conceals the cause of action from the knowledge of the person entitled thereto, the action may be commenced at any time within five years after the person entitled to bring the same, discovers that he has such cause of action, and not afterward." The grounds of demurrer to the replication engaged by counsel for the defendant, are the following:

First. The facts alleged in the replication do not show any defense to the deed of trust at the time the plaintiff paid for its release.

Second. The facts alleged do not show that the plaintiff was free from laches, or that he did not intend to waive all inquiry into the truth of the matter of the amount actually due the defendant at the time of such payment, and,

Third. The replication does not contain any allegation of facts sufficient to constitute fraudulent concealment of the cause of action, or to show diligence on the part of the plaintiff in discovering it.

It is manifest, we think, that the first and second of these propositions are untenable, except so far as they are included in the third. The plaintiff's claim is, that he paid the money in controversy to the defendant, to obtain the release of a certain deed of trust on land which he had recently purchased, in ignorance of the fact that it had already been paid to the defendant and satisfied in full, and that the fact of such previous payment was fraudulently concealed from him by the defendant at the time the money in question was paid, and since, by reason of which he remained in ignorance of such fact and of his right to recover said money back, until a short time prior to the commencement of this suit. The first point urged, viz., that the replication fails to show that there was any defense to the trust deed, is only saying in another form that the replication fails to show that the plaintiff has a good cause

of action.  If there was no defense to the trust deed, or, in other words, if at the time the plaintiff paid said money and obtained the release, the trust deed was a valid and subsisting lien on his land, then clearly the payment was made upon a sufficient consideration, and under no mistake as to any material fact, and the money paid can not be recovered back.  But is it necessary for the plaintiff to show by his replication that he has a good cause of action?  The plea of the Statute of Limitations is a plea in confession and avoidance.  It confesses the plaintiff's cause of action, but seeks to avoid a recovery, by invoking the bar of the statute.  So far then as any issue on that plea is concerned, the plaintiff's cause of action stands admitted, and there is no occasion for re-stating it in the replication.  The case is not one calling for a new assignment, but the only office of the replication is to avoid the bar set up in the plea by bringing the case within the exception provided in the twenty-second section of the statute. It was doubtless proper for the pleader to set out in his replication the circumstances of the transaction out of which the cause of action arose, so far as necessary in order to a sufficient averment of the fraudulent concealment complained of, but this is not for the purpose of re-stating the cause of action as such, but of giving in detail the facts which constituted the fraudulent concealment.

Substantially, the same answer may be given to the second point made in support of the demurrer.  Laches on the part of the plaintiff in omitting to avail himself, at the time he paid the money, of the means of knowledge within his reach, or an intention on his part to waive all inquiry into the truth of the matter of the amount actually due the defendant, would be a *bar* to his right to recover the money back.  This rule is recognized in our opinion in this case, on the former appeal, and such is the doctrine of the authorities referred to by counsel for the defendant, in support of this branch of their argument.  Such facts would doubtless constitute a defense available under the plea of non-assumpsit, but the plaintiff in his replication to a plea, setting up the bar of the statute, is called upon to meet and

Bartalott v. The International Bank.

avoid that defense, and none other. Doubtless laches, or an intention to waive inquiry as to the amount due, if affirmatively shown, would tend to rebut the charge of fraud, but laches, *as a defense*, was not within the issue tendered by the plea replied to.

Recurring then to the third proposition urged, it seems to be well settled by the authorities that a replication to a plea of the Statute of Limitations, setting up a fraudulent concealment by the defendant of the cause of action, must set out the facts and circumstances constituting the fraud. It must further show that there has been no want of reasonable diligence on the part of the plaintiff in discovering the cause of action, and must also disclose the time when and circumstances under which the discovery was made. But it is not essential that the acts constituting the fraudulent concealment should be subsequent to the accruing of the cause of action. They may be coincident with or even prior to it, provided there is the relation of design and its consummation. Way v. Cutting, 20 N. H. 187; Bowman v. Sanborn, 18 Id. 205; Wood v. Carpenter, 101 U. S. 135; Boyd v. Boyd, 27 Ind. 429; Campbell v. Vining, 23 Ill. 525.

The facts alleged in the replication when stripped somewhat of their verbiage, are as follows: On or about October 12, 1870, the plaintiff purchased certain land in Cook county, of Samuel J. Walker, and paid him therefor $48,000, Walker procuring a conveyance of the land to the plaintiff from Henry H. Walker, and assuring plaintiff that it was free from all incumbrances, and promising to furnish him an abstract of title. Walker failing to furnish the abstract, the plaintiff, about January 1, 1874, obtained one for himself, and on examining it, ascertained that there appeared of record a deed of trust on said land, bearing date July 22, 1869, executed by Henry H. Walker to one Francis A. Hoffman, to secure two promissory notes for $15,000 each, payable to the order of Samuel J. Walker. Plaintiff, at the time he purchased the land did not purchase subject to said trust deed or assume its payment, and did not know of its existence. Said notes had been deposited by Samuel J. Walker with the defendant,

as collateral security to certain other notes amounting to $20,000, and on the 11th of September, 1873, Walker paid the defendant $20,000 and canceled the principal notes, and also the two $15,000 notes, secured by the deed of trust, but left all of said notes in the defendant's keeping. When the plaintiff discovered the incumbrance, he made diligent inquiry to learn whether it had been paid. Among other things he inquired of Henry H. Walker, the maker of the notes, who informed him that Samuel J. Walker was to pay them, and referred plaintiff to him for information as to their payment. The plaintiff then asked Samuel J. Walker in relation to the matter, and was informed by him that the defendant held the notes, and that $20,000 remained due thereon, which he, Walker, was unable to pay.

In February, 1874, the plaintiff went to the defendant's office, and inquired of its president, whether the defendant held said notes and if they were paid, and said president informed him that the defendant did hold said notes and trust deed. And said president, well knowing that the indebtedness for which said notes were held as security had been previously paid, and that said notes had been surrendered by said defendant and canceled, fraudulently represented to the plaintiff that said notes had not been paid, and that there was due thereon the sum of $20,000. The plaintiff fearing that said land would be sold under said trust deed, and not knowing that the indebtedness secured by said notes had already been paid, and relying upon the false and fraudulent representations of the defendant, that there was due the defendant on said notes said sum of $20,000, on or about the 4th day of April, 1874, at the instance and request of the defendant, paid the defendant the sum of $15,000, in full satisfaction of the indebtedness so claimed and for a release of said land from said trust deed; and that thereby an action accrued to the plaintiff to recover back from the defendant said money so wrongfully and fraudulently obtained from the plaintiff.

In consequence of said fraudulent representations, said cause of action was not known to the plaintiff at the time it accrued. After said money was paid, the plaintiff demanded

of the defendant the surrender to him of said notes and trust deed, but the defendant, by its president, with the fraudulent design of concealing from the plaintiff the fact of such previous payment by Walker and the cancellation of said notes, and to suppress further inquiry by the plaintiff in respect thereto, replied that said notes and deed of trust were destroyed in the Chicago fire of 1871. In June following, said Henry H. Walker applied to the defendant for the surrender of said notes, and the defendant, with a like fraudulent design, represented that said notes were misplaced or lost, but the defendant at the time of said payment by the plaintiff and thence hitherto has retained said notes in its possession, and refused to produce the same. With a like fraudulent design, the defendant, at the time of the payment of said $15,000 by the plaintiff, purposely omitted and from thence hitherto has omitted to enter any receipt of said money on its books.

About the 1st day of January, 1876, the defendant, during the investigation by an expert into its account with Samuel J. Walker, with like fraudulent design of concealing the plaintiff's cause of action, volunteered, through its president, to read to said expert the check given by Walker in payment of the indebtedness secured by said two $15,000 notes, and notwithstanding said check was so drawn as to designate the notes in payment of which it was given, said president, in order to mislead said expert and conceal from him the fact that the check did designate by words and figures the indebtedness for which it was given, read said check as New York exchange, seeking thereby to convey the impression that said check was a draft on New York, instead of a check on the defendant in payment of and designating said indebtedness.

Again, on the first day of February, 1877, the defendant's president and chief executive officer, in a certain cause then pending in the Superior Court of Cook county, wherein said president was called as a witness, with the design of further misleading the plaintiff and concealing his cause of action and suppressing inquiry on his part which might have led to the discovery thereof, falsely stated under oath that the

notes designated in said check of Walker's were paid, taken up and surrendered, with their securities, April 4, 1874, the the date of the payment of said $15,000 by the plaintiff.

The replication avers that said fraudulent representations were calculated to and did have the effect of concealing from the plaintiff his said cause of action, notwithstanding the exercise on his part of due diligence, from the date of the payment by him of said $15,000 until some time in July, 1881; that in that month, the plaintiff discovered the existence of said cause of action in this way: In a conversation between one O. F. Badger and one A. T. Ewing, held during that month, said Badger informed said Ewing that about December, 1876, he, said Badger, acted as an expert book-keeper in the examination of the account between the defendant and Samuel J. Walker, and through said examination discovered that said Walker paid the indebtedness for which the two $15,000 notes and deed of trust were held by the defendant, on the 11th day of September, 1873, by giving the defendant the check above mentioned, and during said month of July, 1881, said Ewing communicated said fact to the plaintiff. It is further alleged that the plaintiff did not know or suspect the existence of said cause of action, until the date last aforesaid, and that he brought his suit within five years next after making such discovery.

There can be no doubt, we think, that a fraudulent concealment from the plaintiff of his cause of action is sufficiently alleged. Independently of the various devices by which the defendant is charged with having subsequently sought to keep the plaintiff in ignorance of his rights, and to suppress inquiry in relation thereto, the means employed by the defendant to obtain from the plaintiff the money in question not only constituted in themselves a fraud, but the fraud was of such a nature as to be calculated to perpetuate itself by first deceiving the plaintiff as to his rights, and afterward keeping him in ignorance thereof. Taking the averments of the replication as true, and they are so admitted by the demurrer, the defendant, at the time the plaintiff inquired of it as to the situation of the incumbrance on his land, had been

paid in full all the money due it, and was merely a custodian for Walker, of the surrendered and canceled notes. All other available sources of information in relation to the matter had already been exhausted by the plaintiff. On obtaining his abstract and discovering an incumbrance of record, he very naturally applied first to the maker of the notes and trust deed for information. By him, plaintiff was referred to Samuel J. Walker, the payee, and was told that he was to look after the payment of the notes, and could give the plaintiff the desired information. Plaintiff then applied to Samuel J. Walker, and he, whether by mistake or by collusion with the defendant is immaterial, falsely informed the plaintiff that the notes and trust deed were held by the defendant as collateral security for an indebtedness of $20,000. The only other available source of information to which the plaintiff could apply, was the defendant itself. He thereupon went to the defendant, and made inquiries of its chief executive officer, and he, well knowing that the indebtedness for which the defendant had previously held said notes had been paid, and that the notes had been surrendered and canceled, falsely and fraudulently represented to the plaintiff that the notes had not been paid, but were then held by the defendant, as security for $20,000. The plaintiff's means of information were then apparently exhausted. His only alternative was to pay the sum of money demanded by the defendant for a release, or suffer his land to be sold under the deed of trust. He chose the former, and by paying $15,000 obtained his release. Having paid the money, he asked for a surrender of the notes, but was told, falsely it seems, that they were destroyed in the Chicago fire of 1871, and as they bore date more than two years prior to the fire, that story did not seem improbable. Had the notes been produced, it may be presumed that they would have furnished evidence of the fraud, and thus put the plaintiff upon inquiry as to his rights. By their non-production that means of information was denied him.

As said by the Supreme Court in Campbell v. Vining, 23 Ill. 525, "Fraudulent concealment may consist in the fraud connected with, or constituting the cause of action, or it may

consist in acts subsequent, designed to conceal a cause of action originating without fraud."

Way v. Cutting, 20 N. H. 187, was a suit for damages for false and fraudulent representations as to the value of certain land, by means of which the plaintiff was induced to purchase said land, and pay therefor more than it was worth. To a plea of the Statute of Limitations, the plaintiff replied a fraudulent concealment from him by the defendant of his cause of action. After reviewing certain authorities, the court says: "No one of them appears to suggest the notion, that the fraud by which the cause of action is concealed from the plaintiff, need be other than that which caused or attended the original injury itself, in order to retard or prevent the operation of the statute. And again: "The deceit by which the plaintiff was at first wronged, sufficed, through the silence and secrecy of its author, to keep him for a time in ignorance of the wrong. His cause of action was therefore most obviously concealed from him by the act of the defendant, having its beginning in the false representation by which he was induced to enter into the bargain, and continued and kept alive by the secrecy that followed. We are therefore of the opinion that the position assumed by the defendant, that some new act of fraud and concealment, beside the representation made at the sale, must be proved upon him in order to deprive him of the protection of the statute, is not supported by authority or sound reason."

The foregoing reasoning commends itself to our judgment, and it is, we believe, in harmony with the general current of the authorities.

The replication before us, in addition to the original fraud, details various subsequent acts of the defendant, done with the fraudulent intent of keeping said cause of action concealed from the plaintiff, but which, so far as appears, were not brought home to the knowledge of the plaintiff. Did the case made by the replication stand on such subsequent acts alone, it may be doubtful whether it would have sufficiently shown the relation of design and its consummation. But such subsequent acts are material at least as showing that the

Bartalott v. The International Bank.

defendant, after effectually concealing from the plaintiff his cause of action, by means of the original fraud, was carrying out its fraudulent intent by carefully guarding every avenue by which the truth of the matter might become known to others and thus reach the plaintiff. For instance, if the defendant had consummated its fraudulent design in misreading said check, so as to have effectually misled the expert, it is possible that the plaintiff might never have learned the truth of the matter.

Such subsequent expedients on the part of the defendant have an important bearing upon the question of proper diligence on the part of the plaintiff in discovering his cause of action. On that question we are unable to see that the replication is open to any criticism. The fraud was perpetrated, as we have seen, after the plaintiff had exhausted every other available means of information, and when he was shut up, so to speak, to a reliance upon the representations made to him by the defendant. Owing to the care and persistence by which the defendant kept the matter concealed, no facts were afterward brought to the attention of the plaintiff, informing him, or calculated to raise in his mind a suspicion even of the truth, until the discovery was made in the manner stated in the replication.

The court below erred in sustaining the demurrer to the replication, and the judgment will, therefore, be reversed and the cause remanded, with directions to the court below to enter an order overruling said demurrer, and giving the defendant an opportunity to rejoin, if he shall so desire, and for other proceedings.

Judgment reversed.