## LEONARD SMITH v. AMOS B. BISHOP.

In an action on the case for a deceit, it is not a sufficient answer to the statute of limitations, that the plaintiff was ignorant of his cause of action, until within six years, although that ignorance was occasioned by *the nature of the deceit*, or the manner in which the fraud was perpetrated.

Whether, in any case, a distinct subsequent fraud, perpetrated after the cause of action arose, by which the party is kept in ignorance of his rights, would furnish a sufficient answer to a plea of the statute, *quære*. If it would, still the practice complained of must be in itself *a fraud*, and the party must be deceived as to facts material to the action.

This was an action on the case, in which the plaintiff declared, that whereas at Richmond, on the 22d. Aug. 1822, a conversation was had and moved between plaintiff and defendant, of and concerning the purchase of the exclusive right of making, constructing, using, selling and conveying, Ballou's patent improved threshing and winnowing machine, in the counties of Chittenden, Franklin, and Grand Isle, which said right was, then and there owned by one Moses Dennett. of the county of Oxford and State of Maine, and the defendant, then and there, in said conversation, proposed to the plaintiff to be a joint purchaser

with the defendant, of the right aforesaid, for the counties afore-said, of the said Moses Dennett, and the defendant, then and there, falsely, and fraudulently, represented to the plaintiff, that the right aforesaid could not be purchased of the said Dennett, for a less sum than $900, although the defendant, then and there, well knew that the said right or privilege, for the counties afore-said, might be purchased of the said Dennett for less than one half the sam aforesaid, to wit, for the sum of two hundred dol-ars, and the defendant, by said false and fraudulent representa-tion, then and there induced the plaintiff to execute and deliver to the defendant his, the plaintff's note, for the sum of four hun-dred and fifty dollars, two hundred dollars of which note was payable in boots and shoes, by the first day of July, then next, and two hundred and fifty dollars of said note, payable in good and saleable horses or wagons, or harnesses, in one year from the date of said note, and the plaintiff avers, that upon the exe-cution and delivery of the said note to defendant, to wit, on the 26th of August, 1823, the defendant purchased of the said Mo-ses Dennett the right aforesaid, and, then and there, falsely and fraudulently represented to the plaintiff, that he, the defendant, had delivered to the said Dennett the said note, for the payment of one half of the purchase price of the said right, for the said counties, and that the said Dennett had warranted the said pa-tent to be a useful and valuable invention, and that payment upon the said note should not be demanded, in case the utility and value of said machine did not answer the recommendation of the said Dennett. And the plaintiff avers, that, afterwards, to wit, on the first day of Nevember, 1823, he delivered to the defendant boots and shoes, to the value of $450, the defen-dant, then and there, falsely and fraudulently pretending that the said note was then in the possession of the said Dennett, in the said State of Maine, and that when he, the defendant, should deliver the said boots and shoes, to the said Dennett, he would notify the plaintiff thereof, that the said property might be at-tached at the suit of the plaintiff and defendant, for the false representation of the said Dennett, relative to the expense in the building, and the utility of said machine. And the plaintiff avers, that in fact and in truth, the said note was always kept by the defendant in his own possession, he, the defendant, fraudu-lently concealing the same from the knowledge of the plaintiff, nor did the plaintiff know, until A. D. 1830, that a merely nominal

price was paid for the said right, for the said counties, and that the said note of $450, had always remained with the defendant, by reason of all which false and deceitful actings and sayings of the defendant, the plaintiff has been defrauded of his said boots and shoes.

There was, also, another count, declaring, substantially, for the same cause of action, and a count, in trover, for the boots and shoes.

The defendant pleaded, 1. the general issue :—

2. The Statute of limitations.

The plaintiff replied, that the defendant, at the time he purchased the said patent right, in the declaration mentioned, of the said Moses Dennett, for a small and merely nominal sum, as aforesaid, collusively and fraudulently agreed with, and instructed the said Moses Dennett, not to disclose to the plaintiff, nor to any other person, the price, he, the defendant, had paid to the said Dennett for the same, but to keep the same a secret from the plaintiff, and that, in consequence of such collusive agreement with the said Dennett, and the fraudulent concealment of the defendant, the fraud, deceit, and falsehood of the defendant's representations to the the plaintiff, as set forth in plaintiff's declaration, were not discovered and made known to the plaintiff, until a long time after the payment in the plaintiff's declaration mentioned, to wit, in the spring of 1830, and that the said action was commenced within six years after the discovery of the fraud.

To this replication there was a general demurrer, and a joinder in demurrer.

Judgment of the County Court, that the replication was insufficient;—and the case was brought here on exceptions to said judgment.

*Wm. P. Briggs, for plaintiff.*

I. The defendant seeks to shield himself, under the statute of limitations, from the consequences of that just retribution, which this court would otherwise administer for the gross fraud he has practiced upon the plaintiff.

II. It is believed to be a well settled principle in Chancery, where the bill alleges fraud in the defendant, and the defendant pleads the statute of limitations, to permit the bill to be so amended, as to allege the discovery to be within six years. *Wharton* v. *Lowry,* 2 Dal. 364.   1 D. Dig. 625, and the authorities there cited.

III. Can there be any difference between the law and equity side of this court, in this respect ? There may be cases, too, says Lord Mansfield, which fraud will take out of the statute of limitations. *Bree* v. *Holbech*, Doug. Rep. 656.

IV. In Moseley's Reports, 18, 244, 245, it is held that fraud will prevent the operation of the statute of limitations. 5 Dane's Dig. 399.

The case of *First Mass. Turnpike Co.* v. *Field et al*, 3 Mass. Rep. 201, was decided after full hearing, and is in accordance with the principles of natural justice, and is supported by authority.

V. The demurrer admits the defendant had closed, by his own craftiness, all the avenues, by which the plaintiff could arrive at a knowledge of the fraud, and if the defendant is now to be protected, then is the law, instead of being a rule of moral action, enforcing what is right and prohibiting what is wrong, the mere pander to the corrupt designs and baser passions of our nature.

*J. Maeck, for the defendant,* contended, that the replication was insufficient, that the statute began to run the moment the plaintiff's cause of action was perfect, and that it was immaterial whether the plaintiff's ignorance of his rights were the result of the fraudulent concealment or fraudulent representation of defendant, or not. That the statute not only declared, that the action should be commenced within six years from the time it accrued, but expressly inhibited its being commenced or prosecuted after that period, and that, as the legislature had made divers exceptions from the operation of the act, in the act itself, the court could not add to the number of exceptions. In support of his position, he cited the following authorities. *Battley* v. *Faulkner*, 5 C. L. R. 288. *Short* v. *McCarthy*, id. 403. *Howell* v. *Young*, 11 do. 219. *Lord Oakley* v. *Kensington Canal Company*, 27 do. 64. *Clark* v. *Hougham*, 9 do. 47. *Troup* v. *Executors of Smith*, 20 John. 33. *Oothout* v. *Thompson*, 20 do. 277. *Leonard* v. *Pitney*, 5 Wend. 30. *Hamilton* v. *Shephard*, 2 Murphy, 115. *Thompson* v. *Blair*, 2 do. 583. *Callis* v. *Waddy*, 2 Munford 511. *Granger* v. *George*, 11 C. L. R. 185. *Brown* v. *Howard* 6 C. L. R. 25.

The opinion of the court, was delivered by

PHELPS, J. The question, arising upon the demurrer, in-

Chittenden,
January,
1837.

Smith
v.
Butlor.

volves the sufficiency of the plaintiff's replication; and the case resolves itself into two inquiries, viz. whether a fraudulent concealment of the plaintiff's cause of action will protect him against the operation of the statute of limitations, and, if so, whether such a fraud is here alleged as will satisfy the rule.

It is a general rule, that the statute of limitations begins to run from the time when the cause of action accrues, or, in other words, from the time when the plaintiff's right of action is perfected. And it is well settled by numerous precedents, that mere ignorance, on the part of the plaintiff, of his cause of action, creates no exception to the rule. Indeed, if such an answer could be given to the plea of this statute, it is manifest that no distinction can be made, between cases of fraud and cases of any other description. On this point, however, there has never been but one opinion. No case can be found, in which the plaintiff's ignorance of his cause of action has been held, of itself, a sufficient answer to the statute.

If, then, there be any thing in the answer here set up, it must derive its force from the ingredient of fraud. It is insisted, in general terms, that fraud will take a case out of the statute.

Before the correctness of this doctrine can be tested, it becomes necessary to ascertain with accuracy what is intended by it. The proposition admits of various interpretations, and, with a view to its practical application, may be resolved into several subordinate questions.

Is a case, originating in deceit, within the statute at all?

If so, is the application of the statute to the case to be qualified so far, as that it will take effect only from the time when the deceit, or its consequences, may be discovered?

Is there any distinction, in this respect, between the original deceit, which constitutes the gist of the action, and a subsequent and distinct substantive fraud, having for its purpose the concealment of a cause of action, already perfect?

These, and other questions of a similar character, may be put, tending to test both the general accuracy of the doctrine, and its application, if it be in any case sound, to particular cases.

In the view, which we have taken of the subject, we confine ourselves to the question, as it arises in a court of law. The subject presents itself in a very different light, in a court of chancery, exercising its peculiar jurisdiction; for, although that court is, in general, bound by the statute of limitations, yet, in

the exercise of its peculiar jurisdiction over frauds, and especially for purposes not cognizable at law, it will relieve from the operation of this statute, as it will against any other undue legal advantage. And I may here add, that the precedents, cited from some of our sister States, lose much of their weight, when it is considered, that, having no chancery court, they have found it necessary to blend some of the distinctive doctrines of chancery with their common law code.

Chittenden, January, 1837.

Smith v. Bishop.

In support of the general doctrine, that fraud will take a case out of the statute, the case of *Bree* v. *Holbech* is cited. All, which can be derived from that case, is, that Lord Mansfield was not then prepared, upon the spur of the occasion, to deny the doctrine totally, absolutely, and without qualification. The case did not require a decision upon that point, and the doctrine was not recognized. He admits, " there may be cases, which fraud will take out of the statute ;" but the case, instead of sustaining the doctrine, as one of universal, or even general application, proves the reverse.

In the State of Massachusetts, it must be admitted, the doctrine, contended for by the plaintiff, has been adopted. How far the courts of that State, having no court of chancery, were influenced by the consideration already suggested, is not for us to determine. But the doctrine was subsequently examined by the Supreme Court of New York, and its soundness there distinctly denied. It must be admitted, we think, viewing the doctrine with reference to proceedings at law, that the weight of authority is most decidedly against it ; especially, if we consider its adoption in some States, as a substitute for a distinct chancery jurisdiction.

In principle, we think it can not be sustained, as a general rule of law, in the broad terms made use of ; but if it be applicable to any case, it must be to one of peculiar character, and under circumstances deserving of special consideration.

It will not do to say that, whenever the cause of action originates in fraud, the statute of limitations does not apply. Such a decision would repeal the statute. The case is, in terms, embraced in the statute, and, by the express provision of the law, the statute begins to run from the time when the cause of action accrues. Whether the operation of the statute would be more equitable, if a different criterion were adopted, is a question for legislative consideration. We can neither repeal nor alter the

statute—we can, therefore, neither exempt the case from the operation of the statute, nor control that operation, by suspending it till full knowledge is obtained, by the party, of the character and consequences of the injury. Whether the ignorance of the party is fortuitous merely, or results from the character of the fraud, or the manner in which it is perpetrated, we consider immaterial. We are of opinion, that where the cause of action is perfected, and the statute of limitations has subsequently run, the action is barred, although the party may have been ignorant of his cause of action, and that ignorance may have resulted from the character of the original fraud, or the manner in which it may have been perpetrated.

We are, by no means, sure that this is not the most equitable doctrine. The statute of limitations, as applicable to a case like this, is emphatically a regulation of policy. Its object is to put a perpetual seal upon stale controversies, and prohibit their agitation, at a period, when the usual means of eliciting truth are not at hand, but are removed forever,—when right can not be ascertained, and justice must be administered at random. If we make the protection of the statute to depend upon the plaintiff's knowledge of his injury, we require the defendant to perpetuate the evidence of that knowledge, during all time; and we expose him, when this and other evidence, necessary for his defence, shall have passed from him, to fresh litigation, with no other guide to a correct adjudication, than the shreds of evidence, which accident, or a more subtle and sagacious adversary, may have preserved. If we could engraft such a provision upon the statute, we should destroy its practical utility and defeat its great purpose.

Another and a more difficult question may arise. Whether, the cause of action being perfected, a subsequent, distinct and substantive fraud, having for its object to deceive the party in relation to his rights, would take the case out of the statute, is a question, which we do not deem it necessary to decide. Such a case might arise, where the action is founded on a contract. In such a case, whether the remedy on the contract would be barred, although the statute may have run, in consequence of a fraudulent concealment, would admit, perhaps, of different consideration.

We do not consider this case as of that description. Nothing is set forth in this replication, except what constitutes a part of

the original deceit. This being the case, the subject falls within the rule already laid down.

Nor do we think that the matter, set forth in the replication, amounts to such a fraudulent concealment, as would affect the case, under any rule.

In the first place, a mere request of secrecy to a third person, sustaining to the transaction the mere relation of a witness, has never, as we believe, been regarded as an actionable fraud. Nor can we so regard it here, inasmuch as no application appears to have been made to the witness, to disclose the facts of the transaction, nor does any mis-representation appear to have been made to the party, in relation to them.

In the second place, if we consider the representation, as to the cost of the contemplated purchase, as the gist of the action, the actual price paid is not important. The question is, whether the defendant's representations were *bona fide*, or otherwise? and the mere fact, that he gave a less price than was expected, does not constitute a fraud.

In short, it does not appear that there was any fraudulent concealment of the facts, known to the witness, nor, if there had been, does it appear that those facts were material to the action. Admitting that a fraudulent concealment would have the effect contended for by the plaintiff, still, that concealment must be of facts essential to the action.

Upon the whole, we see nothing in the case to take it out of the statute of limitations; and the judgment of the County Court must be affirmed.